IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ERVIN WASHINGTON DANIELS,

        Petitioner

v.                                      Civil Action No. 3:22cv778

R. WILSON,

        Respondent.

## MEMORANDUM OPINION

Ervin Washington Daniels, a federal inmate proceeding *pro se*, filed a 28 U.S.C. § 2241 petition (the "§ 2241 Petition") challenging his institutional conviction in the Bureau of Prisons ("BOP") for possessing a hazardous tool.[1] (ECF No. 1.) Respondent has moved for summary judgment, *inter alia*, on the ground that Petitioner has failed to exhaust his administrative remedies. Despite the provision of *Roseboro*[2] notice, Daniels has not responded. As explained below, the Motion for Summary Judgment, (ECF No. 6), will be GRANTED and the § 2241 Petition, (ECF No. 1), will be DENIED.[3]

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization and punctuation in the quotations from Daniels' § 2241 Petition. Although Daniels identifies three grounds for relief in his § 2241 Petition, he truly only argues that he was improperly found guilty of an institutional infraction when another inmate admitted the items belonged to him. (ECF No. 1, at 6–7.)

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[3] On December 14, 2022, this action was transferred to the undersigned upon the retirement of the Honorable Liam O'Grady, United States District Judge.

R. Civ. P. 56(a).  It is the responsibility of the party seeking summary judgment to inform the Court of the basis for the motion, and to identify the parts of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).  "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448).  Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Respondent submits: (1) the Declaration of Kelly Forbes, a Paralegal Specialist at the Federal Correctional Complex in Butner, North Carolina, (ECF No. 7–1, at 2–6);[4] (2) Daniels's Inmate Data records, (ECF No. 7–1, 8–10); and, (3) a log of Daniels' administrative remedy requests, (ECF No. 7–1, at 12–20).

Daniels did not respond to the Motion for Summary Judgment. Therefore, he has failed to cite to any evidence that he wishes the Court to consider in opposition. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).[5]

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Daniels.

## II.  Undisputed Facts

### A.  Facts Pertaining to Daniels' Institutional Conviction

On December 3, 2008, the United States District Court for the Eastern District of North Carolina sentenced Daniels to a 360-month term of imprisonment for Manufacturing Child Pornography in violation of 18 U.S.C. § 2251(A). (ECF No. 7-1 ¶ 4.) On August 4, 2020, Daniels was housed at FCI Fort Dix. (ECF No. 1-4, at 1.) At approximately 7:25 a.m. on August 4, 2020, Special Investigative Services ("SIS") Technician J. Suero conducted a search in the Laundry Department at FCI Fort Dix. (ECF No. 1-4, at 2.) Prior to the search, staff conducted a pat-down of Daniels and found fourteen books of stamps in his possession. (ECF

---

[4] The Court omits any secondary citations from the Declaration of Kelly Forbes.

[5] Daniels' § 2241 Petition is not signed, much less sworn to under penalty of perjury, (*see* ECF No. 1, at 9), so its contents fail to amount to evidence.

No. 1-4, at 2.)  BOP policy permitted Daniels to possess two books of stamps.  (ECF No. 1-4, at

2.)  At that time, twelve books of stamps were confiscated from Daniels.  (ECF No. 1-4, at 2.)

During the search of the laundry facilities On August 4, 2020, staff discovered one 16 GB

SanDisk Ultra SD card; one 32 Samsung EVO Plus SD card; one pair of Sangean EU-15

wireless ear buds; two Samsung remote controls; two handmade battery packs; one SD card

reader; 100 books of stamps; and one Allen wrench concealed within folded clothing.  (ECF No.

1-4, at 2.)  The items were found within Daniels' "immediate work area."  (ECF No. 1-4, at 2.)

After the search on August 4, 2020, Daniels was charged with violating BOP Prohibited

Act Codes 108 and 305, Possession of a Hazardous Tool and Possession of Anything Not

Authorized.  (ECF No.

1-4, at 2.)  Daniels received a copy of the Incident Report on August 4, 2020, at approximately

6:08 p.m. and he received a revised Incident Report on August 5, 2020, that corrected a

typographical error in the original report.  (ECF No. 1-4, at 2.) [6]

On August 7, 2020, the Unit Discipline Committee ("UDC") conducted a hearing on the

charges.  (ECF No. 1-4, at 2.)  Daniels stated during the UDC hearing that "[Inmate] Anthony

Wayne Carter confessed to Lt. Fe[kete] about all the contraband that was found.  And where the

items was found was not in my area where I work at.  I hope pictures were taken in the area

where the contraband was found."  (ECF No. 1-4, at 2.)  Based on the information contained in

---

[6] An exhibit attached to the § 2241 Petition, which was apparently part of Daniels'
administrative appeal and not a document prepared for filing in this Court, cites 28 U.S.C.
§ 1748 and states that it is "sworn to under penalty of perjury."  (ECF No. 1-3, at 1.)  The
attachment is largely argument.  However, Daniels states that he was not served with the Incident
Report until "the day before my [disciplinary hearing officer ("]DHO[")] hearing."  (ECF No. 1-
3, at 1.)  Nevertheless, in the same attachment Daniels avers that he was served with the Incident
Report on August 5, 2020.  (ECF No. 1-3, at 1.)  Daniels also attached the Incident Report as an
exhibit to his § 2241 Petition and he indicates that it was served on August 5, 2020.  (ECF No. 1-
4, at 2.)  Clearly, Daniels received the Incident Report on August 5, 2020, one day after the
incident and well before his hearing.

the written Incident Report and the severity of the alleged conduct, the UDC referred the charge

to the disciplinary hearing officer ("DHO") "for further hearing as greater sanctions apply."

(ECF No. 1-4, at 2.)  On August 7, 2020, Petitioner was advised of his rights before the DHO.

(ECF No. 1-4, at 4.)

The DHO held the disciplinary hearing on August 19, 2020.  (ECF No. 1-4, at 4.)  The

DHO considered the Notice of Discipline Hearing before the DHO form, wherein Daniels

waived the Staff Representative and other witnesses previously requested during UDC Review.

(ECF No. 1-4, at 5.)  Daniels denied the charges against him, stating "I am not guilty."  (ECF

No. 1-4, at 4.)  Daniels noted no procedural issues and provided no documentary evidence for

consideration.  (ECF No. 1-4, at 4.)

On August 27, 2020, the DHO issued a report finding Daniels had violated BOP Code

108, Possession of a Hazardous Tool, but dismissed the charge for BOP Code 305, Possession of

Anything Not Authorized.  (ECF No. 1-4, at 6.)  As support for his findings, the DHO relied

upon the written Incident Report, Daniels' testimony, the photograph depicting the confiscated

items, and a statement from the Laundry Supervisor.  (ECF No. 1-4, at 5–6.)  The DHO

specifically noted that although Daniels "den[ied] the incident report was true," and "indicated to

the DHO that he [was] not guilty of possessing a hazardous tool," that Daniels was "unable to

provide the DHO with any significant/credible evidence to corroborate [his] claim of not

utilizing a hazardous tool."  (ECF No. 1-4, at 6.)  Accordingly, "based on the greater weight of

the evidence," the DHO determined that Daniels violated Code 108, but not Code 305.  (ECF

No. 1-4, at 6.)  Daniels received the following sanctions:  1) 41 days disallowance of good

conduct time; 2) a $300.00 monetary fine; and, 3) a 180-day loss of visitation privileges.  (ECF

No. 1-4, at 6.)  Daniels was provided with a written copy of the DHO Report on August 28,

2020.  (ECF No. 1-4, at 6; ECF No. 7-1, at 7.)

### B. Facts Pertaining to Exhaustion

The Bureau of Prisons ("BOP") manages an Administrative Remedy Program "to allow

an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."

28 C.F.R. § 542.10(a).  In the case of an appeal from a DHO decision, a prisoner must appeal

directly to the "Regional Director for the region where the inmate is currently located.  28 C.F.R.

§ 542.14(d)(2).  The appeal must be submitted on the appropriate form (BP-10) and sent to the

appropriate Regional Director within 20 calendar days of the date the Warden signed the

response." 28 C.F.R. § 542.15(a).  If the inmate is dissatisfied with the Regional Director's

response, he or she "may submit an Appeal on the appropriate form (BP-11) [for Central Office

Appeals] to the General Counsel within 30 calendar days of the date the Regional Director

signed the response." *Id.*  "When the inmate demonstrates a valid reason for delay, these time

limits may be extended." *Id.*  "Appeal to the General Counsel is the final administrative appeal."

*Id.*[7]

On September 16, 2020, Daniels submitted a request for an administrative remedy to the

Warden at FCI Fort Dix seeking a rehearing of his Incident Report for Code 108.  (ECF No. 7-1

¶ 8.)  The request for a rehearing was rejected because it should have been submitted to the

Regional Director.  (ECF No. 7-1 ¶ 8.)  On September 30, 2020, Daniels submitted a request for

an administrative remedy to the Northeast Regional Office challenging the disciplinary

---

[7] Although the final appeal is to the General Counsel, the regulation and Respondent also
refer to these appeals as appeals to the BOP "Central Office." *See* 28 C.F.R. § 542.15(b).
Accordingly, the Court refers to the final level of appeal as an appeal to the BOP Central Office.

proceeding.  (ECF No. 7-1 ¶ 9; ECF No. 1-4, at 14.)  However, the request was rejected because some of the request was illegible and it was untimely.  (ECF No. 7-1 ¶ 9; ECF No. 1-4, at 14.)

On October 14, 2020, Daniels submitted a second request for an administrative remedy to the Northeast Regional Office.  (ECF No. 7-1 ¶ 9; ECF No. 1-4, at 13.)  Once again, the request was rejected because pages were not legible and it was untimely.  (ECF No. 7-1 ¶ 9; ECF No. 1-4, at 13.)  On November 3, 2020, Daniels sent a third request for an administrative remedy to the Northeast Regional Office; however, this third request was also rejected as untimely. (ECF No. 7-1 ¶ 9; ECF No. 1-4, at 12.)

On January 25, 2021, Daniels submitted an appeal to the Northeast Regional Office, but the appeal was rejected because Daniels had been transferred and was then located in the Mid-Atlantic Region.  (ECF No. 7-1 ¶ 10; ECF No. 1-4, at 10.)  The rejected appeal noted that, Daniels was required to send his appeal to the Mid-Atlantic Regional Office. (ECF No. 7-1 ¶ 10; ECF No. 1-4, at 10.)  On March 28, 2021, Daniels submitted an appeal to the Mid-Atlantic Regional Office, but the appeal was rejected as untimely.  (ECF No. 7-1 ¶ 10; ECF No. 1-4, at 8.)  On April 8, 2021, Daniels submitted yet another appeal to the Mid-Atlantic Regional Office, and the appeal was again rejected as untimely. (ECF No. 7-1 ¶ 10; ECF No. 1-4, at 9.)

On May 14, 2021, Daniels submitted an appeal to the BOP Central Office.  (ECF No. 7-1 ¶ 11.)  The appeal was rejected.  (ECF No. 7-1 ¶ 11.)  Daniels was directed to provide a memorandum from staff "stating [that] the late filing was not [his] fault, then re-submit to the level of the original rejection." (ECF No. 7-1 ¶ 11.)  Daniels failed to file any further requests for an administrative remedy regarding this DHO proceeding and his institutional conviction. (ECF No. 7-1 ¶ 11.)

### III. Exhaustion of Administrative Remedies

"Exhaustion is an important doctrine in both administrative and habeas law . . . ."

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Prior to seeking judicial relief, an inmate filing a

§ 2241 Petition must properly exhaust his or her administrative remedies.  *McClung v. Shearin*,

90 F. App'x 444, 445 (4th Cir. 2004) (citing *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629,

634 (2d Cir. 2001); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981)).  "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules," *Woodford*,

548 U.S. at 90, "'so that the agency addresses the issues on the merits.'"  *Id.* (quoting *Pozo v.*

*McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  An inmate's failure to properly exhaust the

administrative grievance process prior to filing his or her habeas petition may warrant dismissal

of the petition.  *See Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010) (citation omitted) (noting

courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas

relief").  The applicable prison rules "define the boundaries of proper exhaustion." *Jones v.*

*Bock*, 549 U.S. 199, 218 (2007).

The undisputed evidence demonstrates that Daniels failed to properly exhaust his

administrative remedies.  Daniels' various filings were rejected as improper or untimely and

Daniels failed to correct the deficiencies.  The BOP Central Office even specifically provided

Daniels with an avenue to pursue his rejected administrative remedy request by obtaining a

memorandum from staff indicating that the late filing was not his fault and then resubmitting his

appeal to the level of original rejection.  (ECF No. 7-1 ¶ 11.)  However, Daniels failed to

resubmit his appeal with such a memorandum.  (ECF No. 7-1 ¶ 11.)

Because his administrative remedy request and appeal were rejected as untimely and

Daniels failed to resubmit his appeal with a memorandum from staff explaining his lack of

8

timeliness, Daniels failed to "compl[y] with [the BOP's] deadlines and other critical procedural rules," *Woodford*, 548 U.S. at 90, "so that the [BOP could] address[] the issues on the merits." *Id.* (quoting *Pozo*, 286 F.3d at 1024). Thus, Daniels failed to properly exhaust his administrative remedies with respect to his challenges to his DHO hearing. (*Id.*) Daniels offers no argument that would excuse his lack of exhaustion.[8]

Accordingly, the § 2241 Petition, (ECF No. 1), will be DENIED and the Motion for Summary Judgment, (ECF No. 6), will be GRANTED. The action will be DISMISSED WITH PREJUDICE.[9]

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 2/17/2023
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge

---

[8] At most, Daniels contends that "something is very wrong with the time" on his appeal forms and he "ha[d] no control over the mail, plus COVID-19 was pretty bad at the time." (ECF No. 1, at 7.) Daniels failed to exhaust his administrative remedies because his administrative remedy request and appeal were untimely, and he failed to avail himself of the opportunity resubmit his appeal to the original level of rejection with a statement from staff about why his timeliness should be excused. Daniels provides no argument about why he never resubmitted his appeal with this statement.

[9] "Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g., Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate 'where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust.'" *McCoy v. Williams*, No. 3:10CV349, 2011 WL 5153253, at *4 (E. D. Va. Oct. 28, 2011) (quoting *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004)). Daniels' challenge meets this criteria.